```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF KENTUCKY
                  NORTHERN DIVISION
                    AT COVINGTON
```

**CIVIL ACTION NO. 2007-162 (WOB)**

**P. T. JETT**                                                **PLAINTIFF**

VS.                          **OPINION AND ORDER**

**CSX TRANSPORTATION, INC.**                                  **DEFENDANT**

This matter is before the court on defendant's motion for summary judgment (Doc. #23) and motions to strike (Doc. #26, #33, #42).

Having previously heard oral argument on these motions, and having taken them under submission, the court now issues the following opinion and order.

### *Factual and Procedural Background*

This is an action for negligence brought under the Federal Employers Liability Act, 45 U.S.C. § 51 et seq. ("FELA"), by a former railroad employee.

Plaintiff, P.T. Jett, worked for defendant CSX Transportation, Inc. and its predecessor railroads as a switchman/brakeman and then conductor from the 1970s until 2005. During his employment, Jett was required to perform various tasks, including operating "cut levers" in order to couple and uncouple the railcars.

In 2005, Jett underwent cardiac bypass surgery, after which he suffered numerous serious complications, leading to his disability retirement that same year.

In June 2007, Jett was referred by his general physician to Dr. John J. Larkin, M.D., an orthopedic surgeon, for problems with his left shoulder. Dr. Larkin diagnosed Jett as having a torn rotator cuff and, following delays related to continuing infections from his prior heart surgery, Jett underwent surgery to repair his rotator cuff on February 15, 2008. Jett recovered well from that surgery and was last treated by Dr. Larkin on May 29, 2008.

Plaintiff filed this action on October 4, 2007, alleging that his rotator cuff injury was the result of "wear and tear" on his shoulder caused by defendant's negligence in requiring him to perform various job duties, including the pulling of cut levers.[1] (Doc. #1)

Defendant has filed a motion for summary judgment, a motion to strike the causation testimony of plaintiff's treating physician, and a motion to strike the affidavit of another CSX employee. These motions have been fully briefed.

---

[1] These levers, which extend to the side from the coupling, are used to cut the strings of cars going over the "hump," thus diverting various cars to the appropriate tracks in the switching yard. Although much of the hump operation has been computerized, the cutting is still done by a worker walking or running alongside the cars.

*Analysis*

The crux of the pending motions in this matter is whether plaintiff has raised a triable issue as to whether negligence by the defendant contributed to his "wear and tear" rotator cuff injury. Whether the testimony of plaintiff's treating physician should be admitted on this issue is also disputed.

**A.  FELA Liability**

"The test for causation in FELA cases is whether an employer's actions played any part at all in causing the injury." *Hardyman v. Norfolk & Western Railway Co.*, 243 F.3d 255, 259 (6th Cir. 2001) (citation omitted). Although this is a relaxed standard of proof, it "does not mean that a FELA plaintiff need not make any showing of causation." *Id.* at 267. *See also Basinger v. CSX Transp., Inc.*, No. 94-3908, 1996 WL 400182, at *5 (6th Cir. July 16, 1996) ("However, the FELA is not a workers' compensation statute, and plaintiffs must prove that their injuries resulted, at least in part, from the railroad's negligence.") (citations omitted).

Plaintiff has not met the burden he must meet in avoiding summary judgment in the Sixth Circuit in an FELA case. This burden may not be met by conclusory allegations unsupported by evidence. Further, plaintiff seeks to use an expert who does not meet Fed. R. Evid. 702 standards for admissible expert testimony.

B.  **Treating Physician Testimony**

Plaintiff seeks to raise a triable issue as to causation through the deposition testimony of his treating physician, Dr. Larkin. Defendant objects to the admission of this testimony on the grounds that plaintiff did not submit an expert report from Dr. Larkin in compliance with Fed. R. Civ. P. 26(a)(2)(B).

It is undisputed that Dr. Larkin's treating records contain no diagnosis as to the causation of plaintiff's injury. The history Dr. Larkin related upon seeing plaintiff for the first time states only:

> Mr. Jett was kindly referred to us for orthopedic consultation by Dr. Blau. He's a very interesting gentleman. He is 56 years of age and was a train man for CSX for 32 years. Last year he underwent cardiac bypass and then developed a sternal infection, requiring multiple debridements. He was in the hospital for 17 weeks and almost died he says. He's had pain involving his shoulder since. . . .

(Affidavit of Counsel, Exh. B at 2) (Doc. #24)

Defendant took Dr. Larkin's discovery deposition on August 18, 2008. (Doc. #25) When asked by defendant's counsel whether he had been asked to render any cause and effect opinion relating to plaintiff's work on the railroad, Dr. Larkin answered, "No." (Larkin Depo. 33) However, Dr. Larkin testified that on August 5, 2008 -- two weeks before his deposition and several months after he stopped treating plaintiff -- plaintiff's attorney faxed him thirteen photographs of plaintiff's job site, including pictures of the couplings and cut levers, and she later described

4

to him plaintiff's job functions.  (Larkin Depo. 24-27)

At the conclusion of defendant's discovery deposition, plaintiff's counsel asked Dr. Larkin additional questions as if on direct examination.  Plaintiff's counsel described hypothetical job duties and asked Dr. Larkin to assume that plaintiff had performed them.  The following colloquy then occurred:

> Q.  Based on those facts, do you have an opinion as to whether that jerking motion of the left arm was consistent with the chronic large left rotator cuff tear that you found in his left shoulder during the surgery?
>
> Mr. Brockman:  Objection.  He's already said he wasn't asked to give opinions.  I think the deadline's come and gone for that.  Doctor, you can go ahead and answer since this is a discovery deposition.
>
> A.  Okay.  **You're asking me could you tear a rotator cuff by that mechanism?**
>
> **Q.  Yes, sir.**
>
> **A.  You could.**
>
> Mr. Brockman:  Objection.
>
> Q.  Could that be done as repetitive microtrauma?
>
> Mr. Brockman:  Objection.  Go ahead.
>
> A.  Let me try to help with that question, because when you talk about repetitive microtrauma, you're talking about wear and tear over a period of time. But the actual tear of a rotator cuff could occur by two mechanisms, either acutely, where you tear it lifting something, or fall, or pulling, or through where it wears underneath the shoulder blade, the achromium, and wears a hole through it.

>          **So, your question is, could that, over years,
>          result in wear and tear that could result in a
>          rotator cuff tear?  It could, yes.**

    Mr. Brockman: Move to strike.

    Q.       Was the chronic appearance of the tear, as you
describe in your operative report, consistent with
the tear that had occurred over a period of time?

    Mr. Brockman: Objection.

    A.       It was consistent with a tear that was old in
nature.  And there's no way to totally date that,
but it was the kind of tear where it wasn't – it
definitely was not acute, because the edges of the
tear were smooth and rounded, so it tends to tell
you that it's been there for a while.

(Larkin Depo. 38-40)(emphasis added).

In *Fielden v. CSX Transp., Inc.*, 482 F.3d 866 (6th Cir. 2007), the Sixth Circuit clarified the scope of the Rule 26(a)(2)(B) written report requirement as applied to treating physicians who are proffered as witnesses on the issue of causation.  The court held that a treating physician is not generally required to provide a written report unless he is functioning as a retained expert, since determining causation may be an integral part of treating a patient.  *Id.* at 870.  However, the court noted that the need for an expert report depends on factors such as whether the physician was retained to provide expert testimony; whether the physician formed his opinion on causation at the time of treatment or in anticipation of litigation; whether the lack of a report would implicate Rule 26's purposes of avoiding surprise and unnecessary depositions;

6

whether there is room for debate as to causation; and whether the physician will testify to issues beyond those covered in ordinary medical training. *Id.* at 870-73.

The court explained that the "determinative" issue is the scope of the proposed testimony, *i.e.*, whether the physician formed his opinion as to causation as part of his diagnosis and treatment of the plaintiff based on what he learned through actual treatment and from the plaintiff's records up to and including that treatment. *Id.* at 871.

Applying *Fielden* to the facts of this case, the court concludes that Dr. Larkin's testimony about the cause of plaintiff's injury should be excluded. Dr. Larkin did not form his opinion as part of his diagnosis and treatment of plaintiff, but only later based on information provided to him by plaintiff's counsel. *See Mohney v. USA Hockey, Inc.*, 138 Fed. App'x 804, 810-11 (6th Cir. 2005) (holding that district court correctly excluded portions of affidavit of plaintiff's treating physician expressing opinion as to causation because that opinion was not formed during treatment but was based on physician's later review of videotape of accident; physician was thus rendering an expert opinion and was subject to expert disclosure requirements); *Roberts v. Solideal Tire, Inc.*, No. 06-14-DLB, 2007 WL 2990536, at *5 (E.D. Ky. Oct. 10, 2007) (treating physicians may not render opinions outside the scope of their

diagnosis and treatment as reflected in medical records without complying with expert opinion requirements); *Gass v. Marriott Hotel Serv., Inc.*, 501 F. Supp.2d 1011, 1018 (W.D. Mich. 2007) (similar), *reversed on other grounds*, No. 07-1733, 2009 WL 510724 (6th Cir. Mar. 3, 2009).

Because causation is seriously debated,[2] and because Dr. Larkin provided no written report containing the information required by Rule 26, his opinion as to causation must be excluded.

In addition, the court concludes that Dr. Larkin's causation opinion lacks foundation and reliability. Dr. Larkin testified in his deposition that he has no idea how much force it takes to pull the cut levers used by plaintiff; that he does not know how often plaintiff was required to perform this function; that he has never seen plaintiff perform this action; and that he is aware of no studies concerning the coupling of rail cars and ergonomic risks and has never done any research in that regard. (Larkin Depo. 27-30) Dr. Larkin's causation opinion thus lacks the scientific and factual foundation necessary for admission under Fed. R. Evid. 702. *Cf. Hardyman v. Norfolk & Western Railway Co.*, 243 F.3d 255, 260-67 (6th Cir. 2001) (holding that district court improperly excluded expert opinions where experts

---

[2] Indeed, one could fairly infer from Dr. Larkin's recitation of plaintiff's medical history that plaintiff's shoulder problems were related to the complications from his heart surgery.

8

conducted extensive investigation of plaintiff's work conditions and displayed detailed knowledge of the ergonomic requirements of his job tasks).

### C. Other Evidence

As has been pointed out above, plaintiff's proffered medical testimony is inadmissible because the civil rules were not followed. That testimony is also insufficient under Rule 702 standards, which incorporate the criteria of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

The lay proffered testimony of a fellow railroad worker, Dale Epperson, is also insufficient to raise a triable issue of negligence.[3] That affidavit merely states that the coupling levers were difficult to pull because they got rusty. There is no evidence that there is any way to keep them from becoming so, since trains have to run outdoors. No other feasible methodology of handling the cars has been suggested, much less supported by competent evidence. Nor have any tests been done to show the amounts of force involved in pulling rusty levers, as opposed to unrusty levers, and there is no evidence even as to what percentage of the levers on the trains were rusty.

The Sixth Circuit affirmed the grant of summary judgment in

---

[3]This affidavit is also subject to exclusion because this witness was never identified by plaintiff prior to filing his affidavit with plaintiff's opposition to defendant's motion for summary judgment.

a case involving similar shortcomings. *See Van Gorder v. Grand Trunk W. R.R., Inc.,* 509 F.3d 265 (6th Cir. 2007).

That case involved a sticking freight car door. The well-reasoned opinion of the court is too comprehensive for adequate summary, but the highlights are:

1. An FELA plaintiff must "prove the traditional common law elements of negligence; duty, breach, foreseeability, and causation." *Id.* at 269 (citation omitted).

2. The FELA "relaxes a plaintiff's standard of proof regarding causation." *Id* (citation omitted).

3. But the relaxed causation standard does not affect the plaintiff's obligation to prove that the railroad was in fact negligent. *Id.* (citation omitted). "FELA does not lessen a plaintiff's burden to prove the elements of negligence." *Id.*

4. A conclusory expert affidavit which is not based on any tests and fails to "point to any standard of care to which [the railroad] failed to conform," or fails to explain what kind of inspection would be reasonable is insufficient to meet plaintiff's burden. *Id.* at 270.

In a decision issued more than a decade ago, this court made clear that, although railroad workers could be proper expert witnesses, they had to survive *Daubert* scrutiny for their testimony to be admissible. *Rice v. Cincinnati, New Orleans & Pacific Ry. Co.*, 920 F. Supp. 732, 736-37 (E.D. Ky. 1996).

There, plaintiff's fellow workers offered testimony that both the engine cab and a crossing were improperly designed.

The opinion observed in part:

> At one time such testimony might have been admitted, but the duty of the federal trial judge to act as "gatekeeper," with regard to the admission of expert testimony is now much stronger. In the opinion of this court, a "new era" in the scrutiny of expert testimony was introduced by the decision of the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed.2d 469 (1993). Although this decision was primarily concerned with the screening of scientific theories such as the propensities of drugs to cause adverse side effects, this court believes that the "gatekeeping" function discussed by the Court is broad enough to mandate more intensive scrutiny of expert qualifications as well.
>
> . . . .
>
> Scrutinizing the proffered testimony of plaintiff's fellow trainmen as described in the motion in limine, it is readily apparent that they do not have the qualifications to offer expert opinion that the engine cab design is unsafe. Many factors would have to be considered beyond the size of the seat to offer such an opinion. What other ergonomic functions must the seat fulfill? If it were smaller, would this increase the engineer's fatigue or otherwise affect his or her performance? Such questions are beyond the expertise of the proffered trainmen and address themselves to an expert in ergonomics or engine design.
>
> The same is true of the testimony regarding the crossing. The law does not require gates at all crossings. A balancing of many factors, including the expense involved is required. *See Bridger v. Union Railway*, 355 F.2d 382, 389 (6th Cir. 1966). These trainmen, although experienced on the railroad, do not have the expertise to offer reliable testimony on crossing design. To allow them to offer educated or uneducated guesses would be misleading to the jury rather than of assistance to it.

*Id.* at 736-38 (footnotes omitted).

Shortly after the *Rice* decision, the Sixth Circuit expressed

the same views. *See Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 305 (6th Cir. 1997)(excluding expert witness's causation testimony in FELA case because it went beyond his expertise; absent such expert testimony, no triable issue existed as to defective seatbelt), *abrogated on other grounds by General Elec. Co. v. Joiner*, 522 U.S. 136 (1997). *Accord Walker v. Northeast Reg. Commuter R.R. Corp.*, 225 F.3d 895 (7th Cir. 2000)(holding that plaintiff raised no triable issue that lifting injury was caused by employer's negligence; plaintiff presented no expert testimony that employer's methodology was unreasonable).

The Sixth Circuit in *Van Gorder* also rejected expert testimony for failure to perform tests and because his affidavit merely made "the conclusory statement that [the railroad] did not act reasonably because in its pre-trip inspections, it did not discover [the defect that caused a car door to stick]." *Van Gorder*, 509 F.3d at 270.

The only remaining evidence of causation is plaintiff's testimony that his shoulder hurt sometimes while pulling levers at work. However, plaintiff testified that while he sometimes complained to co-workers, he never told supervisors that his work was causing him shoulder problems. (Jett. Depo. 115) Thus, plaintiff cannot show that defendant should be charged with any knowledge of allegedly defective work conditions so as to state an FELA negligence claim. *See Basinger v. CSX Transp., Inc.*, No.

94-3908, 1996 WL 400182, at *5 (6th Cir. July 16, 1996) (affirming summary judgment to railroad on claim by plaintiff that throwing hand-operated switches caused his carpal tunnel syndrome; plaintiff's affidavit held insufficient to raise triable issue).

Finally, plaintiff relies on *Hardyman v. Norfolk & Western Railway Co.*, 243 F.3d 255, 260-67 (6th Cir. 2001), in arguing that plaintiff's fact testimony alone raises a triable issue as to causation. However, *Hardyman* does not advance plaintiff's cause.

There, the plaintiff sued his railroad employer alleging that performing various repetitive motion duties contributed to his carpal tunnel syndrome ("CTS"). *Id.* at 257. Plaintiff produced the testimony of two expert witnesses – one an occupational and environmental medicine specialist, and the other an ergonomist – who both opined directly that plaintiff's job duties contributed to his development of CTS. The district court excluded their opinions, however, on the grounds that the methodology used to reach their opinions was unreliable. *Id.* at 262. The Sixth Circuit held that the district court abused its discretion in so ruling. *Id.* at 267.

The Sixth Circuit further held that, even without expert testimony opining *directly* as to causation, a jury issue might still arise. However, contrary to plaintiff's reading of

13

*Hardyman*, the Sixth Circuit did not state that this was so based on plaintiff's testimony about his job functions alone. Instead, the Sixth Circuit stated that the *other expert testimony* about the generally accepted risk factors for CTS, the presence and number of such factors in the plaintiff's job, and the specific tasks required in each of plaintiff's job requirements could -- coupled with testimony from the plaintiff about his work activities -- be sufficient to "provide a jury with the special expertise . . . necessary to draw a causal inference." *Id.* at 269 (internal quotations and citation omitted). *See also id.* ("We also recognize that even without expert testimony on the specific question of causation, Plaintiff adduced sufficient evidence to demonstrate a causal connection between his job and his CTS *based upon the remaining expert evidence presented in the record*.") (emphasis added).

The record in this matter is devoid of the sort of "other" evidence -- lay or expert -- discussed by the Sixth Circuit in *Hardyman*. Thus, while plaintiff is correct that he need not present expert testimony opining *directly* on the issue of causation, the record nonetheless lacks other sufficient evidence from which a reasonable jury could draw an inference of causation, and such deficit is fatal to plaintiff's FELA claim.

*Conclusion*

For all these reasons, the court concludes that plaintiff has raised no triable issue of fact as to whether any negligence on defendant's part existed or in any way caused or contributed to plaintiff's injury so as to render the railroad liable under the FELA.

Therefore, having reviewed this matter, and the court being otherwise advised,

**IT IS ORDERED** that defendant's motion for summary judgment (Doc. #23) and motions to strike (Doc. #26, #33, #42) be, and are hereby, **GRANTED**.  A separate judgment shall enter concurrently herewith.

This 31st day of March, 2009.



Signed By:
*William O. Bertelsman* WOB
United States District Judge

15